**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>THE WEINSTEIN COMPANY HOLDINGS<br>LLC, *et al.*,<br>　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 18-10601 (MFW)<br>Jointly Administered |
| WEDIL DAVID, DOMINQUE HUETT,<br>ALEXANDRA CANOSA AND AIMEE<br>MCBAIN,<br>　　　　　　　Appellants,<br>v.<br><br>THE WEINSTEIN COMPANY HOLDINGS<br>LLC, et al. and the OFFICIAL COMMITTEE<br>OF UNSECURED CREDITORS,<br><br>　　　　　　　Appellee. | Civ. Case No. 21-00171 (MN) |

---

**THE TWC LIQUIDATION TRUST'S RESPONSE TO EMERGENCY MOTION FOR STAY PENDING APPEAL OF CONFIRMATION ORDER**

---

Dean A. Ziehl, the Liquidation Trustee of the TWC Liquidation Trust (the "Liquidation Trust" or "Appellee"), formed pursuant to the confirmed and effective *Fifth Amended Joint Chapter 11 Plan of Liquidation, dated January 20, 2021* [Bankr. D.I. 3195] (the "Plan"), as successor-in-interest to, and representative of, The Weinstein Company Holdings, LLC and its affiliated debtors (collectively, the "Debtors"), hereby responds (the "Response") to the *Emergency Motion By Non-Consenting Sexual Misconduct Claimants For Stay Pending Appeal of Confirmation Order* (the "Motion") [D.I. 4] filed by Wedil David, Dominque Huett, Alexandra Canosa, and Aimee McBain (together, the "David Claimants"). In support of this Response, the Liquidation Trustee respectfully states as follows:

**BACKGROUND**

1.　　On March 19, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy

Court") for relief under chapter 11 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

2.    On November 17, 2020, the Debtors and Official Committee of Unsecured Creditors (the "<u>Committee</u>", together with the Debtors, the "<u>Plan Proponents</u>") filed the *Fourth Amended Joint Chapter 11 Plan of Liquidation* (the "<u>Fourth Amended Plan</u>") [Bankr. D.I. 3096], which, *inter alia*, embodied a comprehensive settlement of all the claims related to Harvey Weinstein's misconduct.  On December 18, 2020, the David Claimants filed their *Objection to Fourth Amended Joint Chapter 11 Plan of Liquidation* (the "<u>David Plan Objection</u>") [Bankr. D.I. 3145].   On January 20, 2021, the Plan Proponents filed the *Fifth Amended Joint Chapter 11 Plan of Liquidation* [Bankr. D.I. 3182], which contained minor revisions to the Fourth Amended Plan, and filed the Confirmation Brief.[1] On January 25, 2021, the Bankruptcy Court issued a bench ruling (the "<u>Bench Ruling</u>") overruling the David Plan Objection and confirming the Plan and entered the *Order Confirming [the Plan]* (the "<u>Confirmation Order</u>") [Bankr. D.I. 3203] on January 26, 2021.[2]  On February 9, 2021, the David Claimants filed a notice of appeal of the Bench Ruling and Confirmation Order [Bankr. D.I. 3228] and filed in the Bankruptcy Court its *Emergency Motion by Non-Consenting Sexual Misconduct Claimants for Stay Pending Appeal of Confirmation Order* [Bankr. D.I. 3230], which sought to stay consummation of the Plan.

3.    On February 11, 2021, the Plan Proponents filed their *Response to Emergency Motion for Stay Pending Appeal of Confirmation Order* [Bankr. D.I. 3240].  On February 17, 2021, the Bankruptcy Court entered the *Order Denying Emergency Motion by Non-Settling*

---

[1]    *Debtors' and [the Committee's] Joint (I) Memorandum of Law In Support of Confirmation of the [Plan] and (II) Omnibus Reply To Confirmation Objections* [Bankr. D.I. 3184] (the "<u>Confirmation Brief</u>").

[2]    Additional background on the events proceeding the Confirmation Order is set forth in the Confirmation Brief. The Liquidation Trustee incorporate the Confirmation Brief by reference.

*Sexual Misconduct Claimants for Stay Pending Appeal of Confirmation Order* [Bankr. D.I. 3252].

4.       On February 18, 2021, the effective date (the "Effective Date") of the Plan occurred, the Liquidation Trust was established and the Debtors filed the *Notice of Effective Date and Entry of Order Confirming Plan Proponents' Fifth Amended Joint Chapter 11 Plan of Liquidation* [Bankr. D.I. 3258].  Pursuant to section 6.3 of the Plan, the Liquidation Trustee is appointed as the successor-in-interest to, and the representative of, the Debtors' estates for matters that arose prior to the Effective Date.  *See Plan*, § 6.3 [Bankr. D.I. 3182].[3]  For the reasons that follow, the Liquidation Trustee submits the Court should deny the Motion.

## RESPONSE

5.       The Court should deny the Motion because the David Claimants have failed to carry their burden to establish a stay pending appeal is warranted.  In the alternative, if the Court finds a stay pending appeal is warranted, the Court should require the David Claimants post a bond pending resolution of their appeal.

**I.       The David Claimants Fail To Establish A Stay Pending Appeal Is Warranted.**

6.       Rule 8007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") allows a party to move to stay a bankruptcy court's order pending resolution of the moving party's appeal of the order.  Granting a motion to stay a court's order confirming a plan is an "extraordinary remedy".  *In re W.R. Grace & Co.*, 475 B.R. 34, 205 (D. Del. 2012) (quoting *United States v. Cianfrani*, 573 F.2d 835, 846 (3d Cir. 1978)).  The party seeking the stay bears the burden of establishing imposition of a stay is warranted.  *Id.*  In determining whether the moving party met its burden, courts consider the following four factors:

---

[3] Upon the Effective Date, the Committee was dissolved and, with the exception of addressing final professional fee applications, was released and discharged from all rights and duties relating to the Chapter 11 Cases.  *See Confirmation Order*, ¶ 22.

(1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (citation omitted).  The first two factors carry the most weight and "if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of the harms and the public interest is unnecessary, and the stay should be denied without further analysis." *Id.* at 571 (citation omitted).

For the reasons discussed below, the David Claimants have failed to establish a likelihood of success on the merits and irreparable injury, and while the David Claimants failure to carry their burden on the first two factors is sufficient for the Court to deny the Motion without further analysis, the David Claimants also fail to carry their burden as to the last two factors.  The Liquidation Trustee addresses each factor in turn.

### A. The David Claimants Are Unlikely To Succeed On The Merits.

7.     Whether a moving party has established a likelihood of success on the merits is one of the two most important factors in determining whether the moving party carried its burden to obtain a stay pending appeal.  *In re Revel AC, Inc.*, 802 F.3d at 571.  A likelihood of success on the merits means the moving party must show that its chance of succeeding on appeal are "significantly better than negligible", but the moving party's chance of success need not be "greater than 50%." *Id*.

8.     The David Claimants put forth two arguments as to why they are likely to succeed on the merits of their appeal: (1) the Bankruptcy Court erred as a matter of law in approving a plan of liquidation containing non-consensual third-party releases, *see* Motion ¶¶ 37-43, 49-54; and (2) with respect to the Plan's non-consensual third-party releases, the Bankruptcy Court's factual findings as to necessity, fairness and exceptional circumstances were clearly erroneous,

*id.* ¶¶ 44-48, 55-62.   Neither argument establishes that the David Claimants have more than a negligible chance of success on the merits of their appeal.

> **1.      The David Claimants Cannot Show That Bankruptcy Courts In The Third Circuit Cannot Approve Plans Of Liquidation Containing Non-consensual Third-party Releases.**

9.      Appellate courts apply *de novo* review when determining whether a bankruptcy court committed an error of law.  *See In re Culp*, 550 B.R. 683, 695 (D. Del. 2015).  If a party is seeking a stay of a bankruptcy court order on the basis that the bankruptcy court committed an error of law, the moving party must put forth at least some legal authority establishing the bankruptcy court's legal error.  *See id.* at 698; *see also In re THG Holdings LLC*, No. 19-11689 (JTD), 2019 WL 6615341, at *5 (D. Del. Dec. 5, 2019).

10.      The David Claimants argue that their appeal is likely to succeed on the merits because, they incorrectly assert, as a matter of law, "Third-Party Non-Consensual Releases should only be available to a debtor that is truly reorganizing and entitled to a discharge."  *See* Motion ¶ 42.  The David Claimants' argument is unsupported and should be rejected.  The David Claimants fail to cite a single case supporting the proposition that courts in the Third Circuit cannot approve plans of liquidation containing non-consensual third-party releases, which is fatal to their likelihood of success on that issue.  *See Mickens-Thomas v. Martinez*, No. 04-3843, 2005 WL 1586212, at *3 (3d Cir. July 7, 2005) ("The District Court noted the paucity of legal support for [the movant's] claims, and reasonably concluded that those claims do not have a reasonable likelihood of success on the merits."); *Miller v. Penn Manor Sch. Dist.*, 588 F. Supp. 2d 606, 626-27 (E.D. Pa. 2008) ("[P]laintiffs have cited no legal authority to support their conclusion. . . . In the face of the utter lack of authority . . . I conclude that plaintiff fails on his [] challenge on this point and has no likelihood of success on the merits of this claim.").

11.     Instead of offering case law to support their argument, the David Claimants attempt to broaden the Third Circuit's holdings in *In re Continental*, 203 F.3d 203 (3d Cir. 2000) and *In re Millennium Lab Holdings II, LLC*, 945 F.3d 126 (3d Cir. 2019) and cite to *other* jurisdictions that either noted non-consensual third-party releases are considered an extraordinary relief or were found to be impermissible.  *See* Motion ¶¶ 37-43.  The David Claimants argue that *Continental* and *Millennium* hold that non-consensual third-party releases must be "necessary to the reorganization", and therefore plans of liquidation cannot satisfy the test.  *See id.*  But nowhere in *Continental* or *Millennium* does the Third Circuit hold that courts cannot approve plans of liquidation that contain non-consensual third-party releases if the plan proponents satisfy the "exacting standards" established by Third Circuit precedent.  *See In re Millennium Lab Holdings II, LLC*, 945 F.3d at 145 (citing *In re Continental*, 203 F.3d at 214)).

12.     Further, that certain other jurisdictions may have found nonconsensual third party releases problematic and the fact that the Third Circuit has not decided whether the *Continental* standard applies to non-consensual third-party releases in plans of liquidation does not support the David Claimants' likelihood of success on that issue, especially because courts in this Circuit and others have approved plans of liquidation containing non-consensual third-party releases based upon a showing of fairness, necessity and exceptional circumstances.  *See Conestoga Wood Specialty Corp. v. Secretary of HHS*, No. 13-1144, at *3 (3d Cir. Feb. 8, 2013) (relying on persuasive precedent in finding that the moving party failed to establish a likelihood of success on the merits because neither the Third Circuit or the Supreme Court "definitively settled" the issues raised in the appeal); *In re Blitz U.S.A.*, No. 11-13603 (PJW), 2014 WL 2582976 at *13-23 (Bankr. D. Del. Jan. 30, 2014) (approving a plan of liquidation containing non-consensual third-party releases); *see also In re Residential Capital, LLC*, No. 12-12020 (MG), 2013

WL 12161584, at *14 (Bankr. S.D.N.Y. Dec. 11, 2013) (same); *In re Movie Gallery, Inc.*, No. 10-30696 (DOT), 2010 Bankr. LEXIS 5778, at *21 (Bankr. E.D. Va. Oct. 29, 2010) (same).

13.     Accordingly, the David Claimants have failed to carry their burden to show they are likely to succeed on the merits of their claim that courts cannot approve plans of liquidation containing non-consensual third-party releases.[4]

> **2.     The David Claimants Fail To Establish The Court's Factual Findings As To Necessity, Fairness And Exceptional Circumstances Were Clearly Erroneous.**

14.     Appellate courts review a bankruptcy court's findings of fact for clear error. *In re Culp*, 550 B.R. at 695.  If a party is seeking a stay of a bankruptcy court order on the basis that the bankruptcy court made clearly erroneous factual findings, the moving party must either point to evidence clearly contradicting the bankruptcy court's findings or show that there is no evidence in the record to supporting the bankruptcy court's findings. *See id.* at 698; *see also In re THG Holdings LLC*, No. 19-11689 (JTD), 2019 WL 6615341, at *3-5 (D. Del. Dec. 5, 2019). When an appellee has introduced evidence into the record and "an appellant has presented no relevant evidence, there little chance of it prevailing" on appeal. *In re Prospector Offshore Drilling S.a.r.l.*, No. 17-11572 (CSS), 2018 WL 1419086, at *3 (D. Del. Mar. 22, 2018).

15.     The David Claimants assert several, unavailing arguments that they are likely to succeed on the merits of their appeal because the Bankruptcy Court's factual findings as to necessity, fairness and exceptional circumstances were clearly erroneous. *See* Motion ¶¶ 23-28, 44-47, 54.

---

[4]     The David Claimants also appear to argue that the Bankruptcy Court committed an error of law by reducing the test of necessity of the Plan's non-consensual third-party releases down to "just the amount of money necessary to return one cent more to creditors under a plan than they would receive a chapter 7." *See* Motion ¶¶ 40-41. Such an argument is clearly contradictory to both the breadth of the arguments and evidence the Plan Proponents put forth, *see* Confirmation Brief ¶¶ 44-72, and the Bankruptcy Court's specific factual findings on the necessity of the Plan's third-party releases,  *see* Jan. 25 Hr'g Tr. 112:17-119:13.

16.     *First*, the David Claimants argue that the Bankruptcy Court erred in finding that the non-consensual third-party releases of the Former Representatives[5] are necessary to Plan. *See* Motion ¶¶ 44-47.  In arguing the non-consensual releases of the Formers Representatives are unnecessary, the David Claimants assert that neither the Former Representatives' waiver of their potential indemnity claims against the Debtors nor the Former Representatives' waiver of their rights under the Insurance Policies to seek full and priority reimbursement of their defense costs constitute critical contributions to the Plan.  *Id.*

17.     The Bankruptcy Court's findings as to the necessity of the of the non-consensual third-party releases of the Former Representatives[6] are supported by the uncontroverted evidence in the record, *see, e.g.*, *Declaration of Ivona Smith*, ¶¶ 9-20 [Bankr. D.I. 3185]; *Declaration of Paul H. Zumbro*, Ex. 2 § 2 [Bankr. D.I. 3189]; *Declaration of David P. Schack*, Ex. 10 at 23 [Bankr. D.I. 3188], and by case law, *see In re 710 Long Ridge Rd. Operating Co., II, LLC*, No. 13-13653 (DHS), 2014 Bankr. LEXIS 863, at *53-55 (Bankr. D. N.J. Mar. 5, 2014) (finding that the non-debtors' waiver of claims against the debtors and the non-debtors' providing the plan funding constituted a critical contribution to the plan); *In re Residential Capital, LLC*, 2013 WL 12161584, at *14 (same).  Contrary to the David Claimants' assertions, these Chapter 11 Cases are easily distinguishable from *Continental*, where the court rejected the non-consensual third-party releases because "the order confirming the [] [d]ebtors' plan of reorganization and releasing and permanently enjoining [the] [p]laintiffs' claims ***was not accompanied by any findings*** that the release was fair to the [p]laintiffs and necessary to the [] [d]ebtors' reorganization."  *See In re Continental*, 203 F.3d at 214 (emphasis added).  Here, the Bankruptcy Court's ruling was accompanied by findings supported by record evidence.

---

[5] Capitalized terms used but not defined herein shall have the respective meanings ascribed to them in the Plan.

[6] *See* Jan. 25 Hr'g Tr. 115:7-12.

18.     Accordingly, the David Claimants' fail to establish that their necessity argument has a more than negligible chance of success on appeal.[7]  *See In re Culp*, 550 B.R. at 698; *see also In re THG Holdings LLC*, 2019 WL 6615341, at *3-5; *In re Prospector Offshore Drilling S.a.r.l.*, 2018 WL 1419086, at *3.

19.     *Second*, the David Claimants argue that the Bankruptcy Court erred in finding that the non-consensual third-party releases of the non-debtor Released Parties are fair because "the Debtors failed to prove that tort claimants fared better [under the Plan] than they would under the tort system."  *See* Motion ¶ 54.  Part of the inquiry into the fairness of non-consensual third-party releases is determining whether reasonable consideration is given in exchange for the releases.  *See United Artists Theatre Co. v. Walton*, 315 F.3d 217, 227 (3d Cir. 2000) (citing *In re Continental*, 203 F.3d at 214-15).  The consideration provided is reasonable if under the proposed plan, recovery of the non-consenting creditors is greater than under a chapter 7 liquidation scenario.  *See In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 607-08 (Bankr. D. Del. 2001); *see also In re 710 Long Ridge Rd. Operating Co., II, LLC*, 2014 Bankr. LEXIS 863 at *55.

20.     In addition, and as critically important here, fairness is demonstrated by the fact that the Holders of Sexual Misconduct Claims overwhelmingly voted to accept the Plan – over 82%[8] – after the Plan Proponents clearly described the releases in the Disclosure Statement and the consideration being given in exchange for the releases.  *See In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999).  The David Claimants may not to like the way class voting in bankruptcy works, but that does not mean the Plan is unfair.

---

[7] Further discussion on the necessity of the non-consensual third-party releases is contained in the Confirmation Brief ¶¶ 46-53.

[8] *See Declaration of Stephenie Kjontvedt of Epiq Bankruptcy Solutions, LLC. Regarding Solicitation of Votes and Tabulation of Ballots Cast on the Fourth Amended Joint Chapter 11 Plan of Liquidation* [Bankr. D.I. 3160]

21.     The David Claimants argue that the Debtors did not introduce evidence showing that the David Claimants likely fare better under the Plan than in a chapter 7 liquidation. *See* Motion ¶¶ 49, 54.  That is flatly incorrect.  The Plan Proponents introduced into evidence the *Declaration of Kyle Herman* [Bankr. D.I. 3186] and the *Liquidation Analysis* [Bankr. D.I. 3098, Ex. B] prepared by Mr. Herman, *see* Jan. 25 Hr'g Tr. 80:11-81:12, which establish that recoveries for Holders of Sexual Misconduct Claims such as the David Claimants likely are significantly greater under the Plan than any potential recoveries in a chapter 7 liquidation scenario.  The David Claimants declined the opportunity to cross-examine Mr. Herman, *see* Jan. 25 Hr'g Tr. 81:4-6, and did not introduce any evidence showing that their likely recoveries in a chapter 7 liquidation scenario would be greater than their likely recoveries under the Plan.[9]  The uncontroverted evidence submitted by the Plan Proponents led the Bankruptcy Court to find that "it's clear that under this plan, creditors are getting more than if there were a chapter 7 liquidation".  *See* Jan. 25 Hr'g Tr. 113:15-19.  The David Claimants' failure to controvert the Plan Proponents' evidence regarding the fair consideration provided in exchange for the releases shows that their argument on this issue "has little chance of success on appeal."  *See In re Prospector Offshore Drilling S.a.r.l.*, 2018 WL 1419086, at *3.

22.     The David Claimants remaining arguments as to necessity, fairness and exceptional circumstances, other than the arguments addressed above, merely repeat the arguments in the David Plan Objection on such issues, *compare* David Plan Objection ¶¶ 28-49, 52-56, 58 *with* Motion ¶¶ 55-62, and the David Claimants introduce no new evidence in support of their arguments.  The Bankruptcy Court provided specific findings for why it rejected such arguments raised in the David Plan Objection.  *See* Jan. 25 Hr'g Tr. 112:17-119:13.  Under such

---

[9]  Further discussion on the fairness of the non-consensual third-party releases in light of the exceptional facts of these cases is contained in the Confirmation Brief ¶¶ 54-72.

circumstances, the David Claimants fail to establish a likelihood of success with respect to the previously rejected arguments. *See In re Color Spot Holdings, Inc.*, No. 18-11272, 2018 WL 3996938, at *3 (D. Del. Aug. 21, 2018) ("[T]he [e]mergency [m]otion rehashes the same arguments considered and rejected by the [b]ankruptcy [c]ourt based on the same evidence . . . . Merely repeating these rejected arguments does not meet the 'substantial' burden [a]ppellants have to show a likelihood of success on the merits of their appeal."); *see also In re THG Holdings LLC*, 2019 WL 6615341, at *3; *Howard Johnson Int'l, Inc. v. Univ. Hosp., LLC*, No. 11-4720 (JLL), 2018 WL 2095595, at *2 (D.N.J. May 7, 2018).

### B.   Equitable Mootness Alone Is Insufficient To Establish Irreparable Harm.

23.      Whether a moving party has established irreparable harm is the second of the two most important factors in determining whether the moving party carried its burden to obtain a stay pending appeal. *In re Revel AC, Inc.*, 802 F.3d at 571. The David Claimants set forth only two arguments in support of irreparable harm, both of which are without merit. The first irreparable harm argument put forth by the David Claimants is that "the uncertainty of how the appellate courts in the circuit may apply the mootness principles places the [David] Claimants at risk of irreparable injury if a stay pending appeal is not granted, as they may be denied their right of substantive appellate review absent a stay." *See* Motion ¶ 64 (first citing *In re Los Angeles Dodgers LLC,* 465 B.R. 18, 36 (D. Del. 2011); and then citing *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991)).

24.      Case law in this Circuit, including the two cases the David Claimants cite in support of their argument, clearly establishes that a party seeking a stay pending appeal cannot establish irreparable harm solely on the basis that the court's failure to grant the stay may equitably moot the moving party's appeal. *See In re Republic of Phillipines*, 949 F.2d at 658

("[T]he fact that the decision on the stay may be dispositive of the appeal . . . is a factor that an appellate court must consider, but that alone does not justify pretermitting an examination of the nature of the irreparable injury alleged and the particular harm that will befall the appellant should the stay not be granted."); *In re Swift Energy Co.*, No. 16-404 (GMS), 2016 WL 3566962, at *7 (D. Del. June 29, 2016) ("[I]t is well established that the possibility that an appeal may become moot does not constitute irreparable harm for purposes of obtaining a stay." (citation omitted)); *In re W.R. Grace & Co.*, 475 B.R. at 206-07 (same (collecting cases)); *In re Los Angeles Dodgers LLC*, 465 at 36 (same).

25.     The David Claimants' second irreparable harm argument is that the delay associated with the prosecution of the appeal will endanger their ability to secure evidence and testimony they assert is needed to prevail on their claims and they may be forced to dismiss their cases pending in other jurisdictions.  The David Claimants do not make any showing how denial of the requested stay will prevent them from securing testimony or evidence or force the dismissal of their pending cases.   The David Claimants also appear to jump to the conclusion that if denied the stay they will automatically lose the appeal but present no support for this reasoning.   In sum, the David Claimants fail to establish irreparable harm.

26.     The David Claimants thus fail to carry their burden on the two most important factors—likelihood of success on the merits and irreparable harm.  That alone is a sufficient basis for the Court to deny the Motion without further analysis.  *See In re Revel AC, Inc.*, 802 F.3d at 571.  The David Claimants, however, also fail to carry their burden as to the last two factors.

C.     **A Stay Pending Appeal Will Substantially Injure Other Parties Interested In The Proceeding.**

27.     The third factor in the stay analysis is "whether the issuance of the stay will substantially injure the other parties interested in the proceeding." *In re Revel AC, Inc.*, 802 F.3d at 568.   The David Claimants say virtually nothing about the effect of their request on other parties.  The David Claimants' sole argument on this issue is that a "short delay in the event the [s]ettlement cannot close immediately will not materially harm the Debtors' estates or other parties." *See* Motion ¶ 66.  The David Claimants cite no case law to support their argument.

28.     But the David Claimants are seeking a stay pending their appeal from an order confirming a plan that effectuates a global settlement, which was arduously negotiated over the span of two and a half years.  And the "other parties" are the 82.98% of Holders of Sexual Misconduct Claims (*i.e.*, the other survivors of Harvey Weinstein's misconduct that want closure), the 96% of the Debtors' trade creditors who supported the Plan, and the Settlement Parties whose compromises and financial contributions made the Plan possible.  Granting the stay would delay the Plan's streamlined process for resolving survivors' claims and compensating them for the harm they suffered.  As the Bankruptcy Court recognized, a defining feature of the Plan was the opportunity for sexual abuse survivors to obtain prompt closure in exchange for the compromise of their rights:

> Every victim of Harvey Weinstein was victimized and deserves to have its say into the plan confirmation. And if they choose not to release Mr. Weinstein, they have the right to go and have a jury trial or resolution and closure for them as a result of his abuse. But 83 percent of the victims have expressed very loudly that they want closure through acceptance of this plan, that they do not seek to have to go through any further litigation in order to receive some recovery, some possible recompense for what was done to them; although, it is clear that money alone will never give them that. But I can only deal with the financial aspect of this, and the Bankruptcy Code provides that creditors should decide, as a class, how they want their claims to be treated.  And in this case, both the

13

> trade creditors and the tort creditors, have come to a resolution
> with some recovery for the victims of Mr. Weinstein's terrible
> conduct.

*See* Jan. 25 Hr'g Tr. 116:18-117:8.

29.     The relief sought by the David Claimants would stymie (and likely destroy) that bargain and impose substantial delay in an emotionally charged context where prompt disposition is particularly important.  *See Bullard v. Blue Hills Bank*, 575 U.S. 496, 135 S. Ct. 1686, 1693 (2015) ("[E]ach climb up the appellate ladder and slide down the chute can take more than a year.").  Such a substantial delay in distribution to Plan's beneficiaries constitutes "substantial harm to other parties."  *See In re F.G. Metals, Inc*., 390 B.R. 467, 478 (Bankr. M.D. Fla. 2008); *see also In re Pub. Serv. Co.*, 116 B.R. 347, 350 (Bankr. D. N.H. 1990) ("[T]he delay caused to creditors receiving their payments is also a significant harm warranting denial of a stay."); *In re Charter Co.*, 72 B.R. 70, 72 (Bankr. M.D. Fla. 1987) (claimants will "suffer substantial harm as a result of a stay because of the resulting delay in their receipt of settlement funds").

30.     The issuance of a stay pending appeal also is particularly inappropriate when, as is the case here, the moving party is unlikely to succeed on the merits.  *See In re First Magnus Fin. Corp.*, No. 07-01578, 2008 Bankr. LEXIS 888, at *3 (Bankr. D. Ariz. Mar. 18, 2008) ("Both creditors and the Debtor need to maintain the positive momentum of this case, and continue the liquidation and litigation progress which was set in motion before and since confirmation.  This effort to maximize monetary recoveries must not be stalled by an appeal which has little merit and, based on the evidence (or lack thereof), offers only a pale alternative to the well-conceived plan approved by the court.  Delay harms everyone.  Delay which sidetracks progress serves no one.  Paralysis of progress invites financial disaster to the creditor

body.").   The David Claimants have not carried their legal burden to allow their parochial interests to impose that significant risk on the other survivors of Harvey Weinstein's misconduct.

> **D.    The Public Interest Weighs Against Granting A Stay Of The Confirmation Order Pending Resolution Of The David Claimants' Appeal.**

31.    The final factor in the stay analysis involves determining "where the public interest lies."  *In re Revel AC, Inc.*, 802 F.3d at 568.  The David Claimants make a desultory case for why the public interest supports a stay.

32.    *First*, the David Claimants argue the public interest lies with them because there is "strong public policy in favor of correct application of the law."  *See* Motion ¶ 67.  As discussed above, the David Claimants fail to present a viable argument, much less establish, that the Bankruptcy Court committed an error of law.  *See supra*, Part I.A.  The Bankruptcy Court has actually correctly applied the law, which dictates that the public interest weighs against granting the Motion.

33.    *Second*, the David Claimants argue the public interest is in their favor because "a stay preserves the ability to redress harm through appellate review", which is just a restatement of their argument that they will be irreparably harmed if their Motion is denied and they lose their appeal "as a result of equitable mootness."  *See* Motion ¶¶ 64, 67.  But, as discussed above, "the Third Circuit and courts within its appellate jurisdiction have previously recognized [] that the risk of equitable mootness by itself is insufficient to demonstrate irreparable injury for purposes of a stay."  *In re W.R. Grace & Co.*, 475 B.R. at 206-07 (collecting cases).

34.    The facts of these cases and relevant case law actually reflect that the public interests weighs against granting the Motion.  "[E]xpedition is always an important consideration in bankruptcy,"  *Bullard*, 135 S. Ct. at 1694, and there is a "great public interest in

having . . . [c]hapter 11 bankruptcy proceedings continue to an orderly, efficient resolution to maximize and preserve the estate's assets", *In re Bankr. Appeal of Allegheny Health, Educ. & Research Found.*, 252 B.R. 309, 331 (W.D. Pa. 1999); *see also Century Glove, Inc. v. First Am. Bank*, 860 F.2d 94, 98 (3d Cir. 1988) (highlighting how "issues central to the progress of the bankruptcy petition, those likely to affect the distribution of the debtor's assets, or the relationship among the creditors, should be resolved quickly" (citation and quotation marks omitted)).  Consistent with the Bankruptcy Court's findings, *see* Jan. 25 Hr'g Tr. 116:18-117:8, this "great public interest" will be undermined if the Confirmation Order is stayed and the proposed distribution of the estate's assets to its creditors is delayed.

35.     In addition, "the public interest requires bankruptcy courts to consider the good of the case as a whole, and not [just] [objecting] creditors' [] concerns."  *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 284 (Bankr. S.D.N.Y. 2007).  Apropos here, where the overwhelming majority of creditors voted in favor of the Plan, "the public interest . . . strongly dictate[s] against any . . . stay" because "[i]t would be grossly unconscionable . . . to thwart the will of such an overwhelming majority [of voting creditors] to accommodate the desires of such a small minority, who are simply dissatisfied with the Settlement under the Plan."  *Id*.

36.     While the Appellee recognizes that the David Claimants are survivors of Harvey Weinstein's misconduct and empathize with their position as such, the overwhelming majority of the survivors who cast votes in the Chapter 11 Cases voted in favor the Plan.  When the overwhelming majority of creditors support a proposed plan, as is the case here, it is not in the public interest to stay consummation of the plan because a vocal objecting minority of claimholders are dissatisfied with the outcome.  *See id*.

16

## II.     To The Extent The Court Grants A Stay Pending Appeal, The David Claimants Must Post a Bond.

37.     Even if the David Claimants could meet their burden to show a stay is warranted—which they cannot do—the Court should require the David Claimants to post a substantial bond in the event a stay pending appeal is granted.  Bankruptcy Rule 8007 allows the Court, in its discretion, to condition a stay pending appeal on the filing of a bond.  The purpose of Bankruptcy Rule 8007 is to protect the non-moving party from potential losses resulting from the stay.  *See In re United Merchants & Mfrs., Inc.*, 138 B.R. 426, 430 (D. Del. 1992) (citations omitted).  Where a stay pending appeal is likely to cause harm by diminishing the value of an estate or impairing the non-moving parties' interest in their recovery, fairness to all parties who may be harmed requires that the Court set a bond at a level sufficient to cover all potential harms.  *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 351 (S.D.N.Y. 2007).

38.     As set forth above, the holders of Sexual Misconduct Claims and other creditors of the Debtors will suffer immediate and severe harms if the Confirmation Order is stayed pending appeal.  Accordingly, the Court should require the David Claimants to post a bond, in an amount not less than **$13,000,000** (representing the approximately $11,500,000 in funds remaining in the estate as of the Effective Date which were then transferred from the Debtors to the Liquidation Trust, plus $1,500,000 in estimated costs), for at least three reasons.

39.     *First*, if the Confirmation Order is stayed, the funds held by the Liquidation Trust and reserved for distributions for allowed claims other than the Sexual Misconduct Claims may be whittled away over time as the David Claimants' appeal is prosecuted.  Absent a bond protecting the funded recoveries projected under the Plan, it will be the creditors of the Debtors, not the David Claimants that bear the risk that the Plan recoveries are reduced during the appeals process.

40.     *Second*, significant distributions to Holders of Sexual Misconduct Claims and distributions to other parties in interest will be delayed, resulting in lost opportunity costs. Further delay that would result from a stay pending appeal prolongs the mental anguish experienced by Holders of Sexual Misconduct Claims, prevents such Holders from obtaining finality with respect to their Claims arising out of Harvey Weinstein's misconduct, and would put such Holders' expected recoveries at risk.  Absent a bond, these risks and burdens will be borne entirely by the Holders of Sexual Misconduct Claims, not the appealing David Claimants.

41.     *Third*, staying the Confirmation Order will result in increased professionals' fees and other administrative costs associated with maintaining the chapter 11 cases.  These increased administrative costs will (i) be incurred to the detriment of, and without any incremental benefit to, the Debtors and their stakeholders, (ii) likely need to be paid from the $35 million recovered under the Plan, and (iii) be borne entirely by the Debtors and their stakeholders, not the appealing David Claimants.

42.     Courts in this Circuit and others have previously concluded that risk associated with plan consummation, lost opportunity costs from distribution delays and increased professional fees and administrative expenses all weigh in favor of requiring an appealing party to post a bond in connection with a stay pending appeal.  *See, e.g.*, *In re Adelphia Commc'ns Corp.*, 361 B.R. at 353-54 (discussing, among other reasons for requiring a bond in connection with a stay pending appeal, professionals' fees and the risks that the plan may fall apart pending appeal); *In re Tribune Co.*, 477 B.R. 465, 478–83 (Bankr. D. Del. 2012) (discussing, among other reasons for requiring a bond in connection with a stay pending appeal, increased professionals' fees and administrative expenses and opportunity costs from delayed distribution); *In re Motors Liquidation Co.*, 539 B.R. 676, 686-87 (Bankr. S.D.N.Y. 2015) (same).

43.     The David Claimants' first argument as to why a bond is not warranted here is their bald assertion that a stay pending resolution of their appeal "will not harm the Debtors in any way" because the "Debtors are not operating and have no employees."  *See* Motion ¶ 69. The law requires more. Second, the David Claimants' argue requiring the David Claimants to post a $36 million bond is outrageous and tantamount to denying the stay.  *Id*.  As set forth above, the Liquidating Trustee is not seeking a bond of $36 million, in large part because the Insurance Companies have funded the agreed amounts under the settlement approved by the Plan.  However, it is not outrageous to request a bond of $13 million where this appeal and the attendant costs will diminish the limited funds transferred to the Liquidation Trust.

44.     Absent "exceptional circumstances," the appealing party must post a bond "at or near the full amount of the potential harm to the non-moving parties."  *In re Adelphia Commc'ns Corp.*, 361 B.R. at 351; *see also In re Tribune Co.*, 477 B.R. at 478. The bond requirement may not be eliminated or reduced unless doing so "does not unduly endanger the [prevailing party's] interest."  *de la Fuente v. DCI Telecomms., Inc.*, 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003) (citation omitted).   The party seeking a stay pending appeal bears the burden of providing specific reasons why there are "exceptional circumstances" that warrant this Court's departing from the standard requirement of a sufficient bond.  *See In re Calpine Corp.*, No. 05-60200 (BRL), 2008 WL 207841 (Bankr. S.D.N.Y. Jan. 24, 2008).

45.     The David Claimants have failed to meet their burden to establish that a bond is not required for this Court to issue a stay pending appeal.  The David Claimants assert, without support, that a bond is not necessary because an appeal will not harm the Debtors in any way.  *See* Motion ¶ 69.  Additionally, the David Claimants assert that it is unfair to expect the four sexual assault victims that comprise their group to post such a significant bond.  While the

19

David Claimants' are also the unfortunate victims of Harvey Weinstein, they should not be permitted to foist all the economic risk that the Plan unravels onto the Holders of Sexual Misconduct Claims and the Debtors other creditors that voted overwhelmingly to approve the Plan.  The financial risks described herein establish that a stay pending appeal will diminish estate property, jeopardize recoveries and harm the Debtors and their stakeholders.  The David Claimants' unsupported assertions are insufficient to establish exceptional circumstances that would obviate the requirement that the David Claimants post a bond "at or near the full amount of the potential harm to the non-moving parties."  *In re Adelphia Commc'ns Corp.*, 361 B.R. at 351.  Indeed, the facts and circumstances here buttress the position that the David Claimants must post a substantial bond in the event a stay pending appeal is granted.  As discussed above, the Plan has been confirmed and is effective, and will provide Holders of Sexual Misconduct Claimants and other parties in interest with meaningful recoveries where there is otherwise no prospect of such recovery.  Therefore, the David Claimants should not be allowed to take a free shot at an appeal without any obligation to make the Debtors and their stakeholders whole if, and when, the David Claimants' appeal fails.  Accordingly, if this Court is inclined to grant the stay, it should require the David Claimants to post a bond, in an amount not less than $13,000,000.

## CONCLUSION

WHEREFORE, based on the foregoing reasons, the Liquidation Trustee respectfully requests that the Court deny the relief requested in the Motion and in the alternative, require the David Claimants post a bond pending resolution of their appeal.

20

Dated:    February 25, 2021            **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Colin R. Robinson*
Robert J. Feinstein (*pro hac vice* pending)
Debra I. Grassgreen (*pro hac vice* pending)
Jason H. Rosell (*pro hac vice* pending)
Colin R. Robinson (DE Bar No. 5524)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899 (Courier 19801)
Telephone: 302-652-4100

*Counsel for the Appellee / Liquidation Trustee*

DOCS_DE:233057.4 92767/001