IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WEDIL DAVID, DOMINIQUE HUETT, ALEXANDRIA CANOSA AND AIMEE MCBAIN, )<br>)<br>)<br>)<br>Appellants, )<br>)<br>v. )<br>)<br>THE WEINSTEIN COMPANY )<br>HOLDINGS, LLC, *et al.* and the OFFICIAL )<br>COMMITTEE OF UNSECURED )<br>CREDITORS, )<br>)<br>Appellees. ) | C.A. No. 21-171 (MN) |

## MEMORANDUM OPINION

Frederick B. Rosner, Zhao (Ruby) Liu, THE ROSNER LAW GROUP LLC, Wilmington, DE; Douglas H. Wigdor, Bryan L. Arbeit, WIGDOR LLP, New York, NY; Kevin Mintzer, THE LAW OFFICE OF KEVIN MINTZER, P.C., New York, NY; Thomas P. Giuffra, RHEINGOLD GIUFFRA RUFFO & PLOTKIN LLP, New York, NY – Attorneys for Appellants.

Robert J. Feinstein, Debra I. Grassgreen, Jason H. Rosell, Colin R. Robinson, PACHULSKI STANG ZIEHL & JONES LLP, Wilmington, DE – Attorneys for Appellee, the Liquidation Trustee of the TWC Liquidation Trust, as successor-in-interest to, and representative of, The Weinstein Company Holdings, LLC and its affiliated Debtors.

March 16, 2021
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Pending before the Court is Appellants' *Emergency Motion By Non-Consenting Sexual Misconduct Claimants For Stay Pending Appeal of Confirmation Order* (D.I. 4)[1] ("the Emergency Stay Motion"). The Court has considered the opposition (D.I. 11) filed by Dean A. Ziehl, as Liquidation Trustee of the TWC Liquidation Trust ("Appellee") formed pursuant to the *Fifth Amended Joint Chapter 11 Plan of Liquidation,* dated January 20, 2021 (Bankr. D.I. 3203-1) ("the Plan"), and as successor-in-interest to, and representative of, The Weinstein Company Holdings, LLC and its affiliated debtors (collectively, "the Debtors"). The Emergency Stay Motion is fully briefed. (D.I. 4, 11, 14). The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. For the reasons set forth herein, the Court will deny the Emergency Stay Motion.

**I.   BACKGROUND**

On March 19, 2018 ("the Petition Date"), each of the Debtors filed a voluntary petition with the Bankruptcy Court for relief under chapter 11 of the Bankruptcy Code. On November 17, 2020, the Debtors and Official Committee of Unsecured Creditors ("the Committee," and together with the Debtors, "the Plan Proponents") filed the *Fourth Amended Joint Chapter 11 Plan of Liquidation* (Bankr. D.I. 3096) ("the Fourth Amended Plan"), which, *inter alia*, embodied a comprehensive settlement of all the claims related to Harvey Weinstein's misconduct. The proposed plan was approved by approximately 83 percent of the holders of sexual misconduct claims (37), and by over 96 percent in amount and number of general unsecured claims.

---

[1] The docket of the Chapter 11 cases, captioned *In re The Weinstein Company Holdings LLC, et al.*, No. 18-10601 (MFW) (Bankr. D. Del.), is cited herein as (Bankr. D.I. __).

1

The sole objectors to plan confirmation were the four Appellants, who each hold sexual misconduct claims against Harvey Weinstein. The Plan includes a global settlement which provides, among other things, for nonconsensual third-party releases of insurers and former officers and directors. In exchange for the releases, insurers will contribute a $35,214,822.30 for the benefit of the Debtors' estates and creditors, of which $17,064,525.60 will be set aside in a trust for the benefit of claimants holding sexual misconduct claims.[2] In exchange for their release, former officers and directors are contributing a significant portion of their insurance coverage rights, including a waiver of their potential indemnity claims against the Debtors and a waiver of their rights under the respective insurance policies to seek full and priority reimbursement of their defense costs.[3] On December 18, 2020, the Appellants filed their objection to confirmation of the proposed plan (Bankr. D.I. 3145) ("the Objection") which asserted that, among other things, the non-consensual third party release of former officers and directors contained in the proposed plan did not satisfy the Third Circuit standard for approval because the release was not necessary to a reorganization, and the former officers and directors did not give fair consideration in exchange for their release.

---

[2] *See* Plan, Bankr. D.I. 3203-1 at 17, § 5.4.

[3] *See* Plan, Bankr. D.I. 3203-1 at 20, § 5.7. In exchange for their release, former officers and directors have agreed to waive, in part, their entitlement to reimbursement of all defense costs and expenses as a priority to payment of any liability or settlement amount pursuant to the terms of the applicable insurance policies. As a result of such waiver, the former officers and directors shall be reimbursed only 50% of the fees and expenses incurred by the former officers and directors as of April 25, 2019. For any other defense costs or expenses incurred by the former officers and directors after that date, the former officers and directors will be reimbursed 0% of their fees and expenses. Absent the waiver provided by the former officers and directors, reimbursement of all of their defense costs and expenses would have priority in right of payment against the payment of any liability or settlement amount pursuant to the terms of the applicable insurance policy. *See id.*

On January 20, 2021, the Plan Proponents filed the *Fifth Amended Joint Chapter 11 Plan of Liquidation* (Bankr. D.I. 3182), which contained minor revisions to the Fourth Amended Plan, and also filed their brief in support of confirmation (Bankr. D.I. 3184) ("the Confirmation Brief"). Following an evidentiary hearing held on January 25, 2021, the Bankruptcy Court issued a bench ruling (*see* D.I. 4-2, 1/25/21 Hr'g Tr. at 112-19) ("the Bench Ruling") which overruled Appellants' Objection and confirmed the Plan. The Confirmation Order was entered on January 26, 2021. (Bankr. D.I. 3203).

On February 18, 2021 ("the Effective Date"), the effective date of the Plan occurred, the Liquidation Trust was established, and the Debtors filed their Notice of Effective Date (Bankr. D.I. 3258). Pursuant to section 6.3 of the Plan, the Liquidation Trustee is appointed as the successor-in-interest to, and the representative of, the Debtors' estates for matters that arose prior to the Effective Date. (*See* Plan § 6.3).

On February 9, 2021, Appellants filed their notice of appeal of the Confirmation Order (Bankr. D.I. 3228) and also filed in the Bankruptcy Court an *Emergency Motion by Non-Consenting Sexual Misconduct Claimants for Stay Pending Appeal of Confirmation Order* (Bankr. D.I. 3230) ("First Stay Motion"), which sought to stay consummation of the Plan. On February 11, 2021, Plan Proponents filed their opposition. (Bankr. D.I. 3240). On February 17, 2021, the Bankruptcy Court entered an Order denying the First Stay Motion (Bankr. D.I. 3252).

## II. JURISDICTION AND STANDARD OF REVIEW

The Confirmation Order is a final order, and the Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). On appeal, district courts "review the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse

thereof." *In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1998). The Bankruptcy Court's application of facts to a controlling legal standard will be reviewed on appeal for clear error. *See Pa. Higher Educ. Assistance Agency v. Gillins*, 2003 WL 22844398, at *1 (D. Del. Nov. 24, 2003) (reviewing lower court's application of facts to controlling legal test for clear error); *In re Paige*, 2008 WL 1994905, at *2 (D. Utah May 8, 2008) (determination was factual where there was "no real issue as to the controlling law" but only to the court's application of that legal standard to facts).

### III. ANALYSIS

"The granting of a motion for stay pending appeal is discretionary with the court." *In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *2-3 (Bankr. D. Del. Mar. 27, 2001). Staying a plan confirmation order is an "extraordinary remedy." *In re W.R. Grace & Co.*, 475 B.R. 34, 205 (D. Del. 2012) (quoting *United States v. Cianfrani*, 573 F.2d 835, 846 (3d Cir. 1978)). The movant bears the burden of establishing that imposition of a stay is warranted. *Id*. In determining whether the moving party met its burden, courts in the Third Circuit consider the following factors:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (citing *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)). "'[T]he most critical' factors, according to the Supreme Court, are the first two: whether the stay movant has demonstrated (1) a strong showing of the likelihood of success and (2) that it will suffer irreparable harm." *Id*. (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Because all four factors are interconnected, the Third Circuit has instructed that the analysis should proceed as follows:

4

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a 'sliding scale' approach. However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.

*Id*. at 571 (internal quotations and citation omitted) (emphasis in original).

### A. Likelihood of Success on the Merits

Whether the moving party has established a likelihood of success on the merits is one of the two most critical factors in determining whether the moving party carried its burden to obtain a stay pending appeal. *Revel AC*, 802 F.3d at 571. Although the moving party must show that its chance of succeeding on appeal are "significantly better than negligible," the moving party's chance of success need not be "greater than 50%." *Id*. Appellants assert that they are likely to succeed on the merits of their appeal of the Confirmation Order based on two arguments: (1) that the Bankruptcy Court erred as a matter of law in approving a plan of liquidation containing non-consensual third-party releases (*see* D.I. 4 at 16-19, 22-24); and (2) with respect to the Plan's non-consensual third-party releases, the Bankruptcy Court's factual findings as to necessity, fairness, and exceptional circumstances were clearly erroneous (*see id*. at 20-22, 24-27).

#### 1. Plan of Liquidation Containing Non-Consensual Third-Party Releases

In *Continental*, the Third Circuit declined to adopt a per se rule but held that "[t]he hallmarks of permissible non-consensual releases [are] fairness, necessity to the reorganization, and specific factual findings to support these conclusions." *Gillman v. Continental Airlines (In re Continental Airlines),* 203 F. 3d 203, 214 (3d Cir. 2000). Appellants argue that they are likely to succeed on the merits of their appeal because the releases at issue do not satisfy the *Continental* standard, and the Plan should not have been confirmed. (D.I. 4 at 2).

5

Appellants assert that "the Debtors have been out of business for years" and "Third-Party Non-Consensual Releases should only be available to a debtor that is truly reorganizing and entitled to a discharge." (*See id.* at 16, 18). Appellants argue that the "Plan is not preserving and protecting the Debtors enterprise value or saving any jobs. The Debtors are simply liquidating, which they could easily accomplish in a chapter 7." (*Id.* at 17). Appellants are not likely to succeed on the merits of this argument.

Although Appellants are correct that the Third Circuit has not yet had occasion to rule on third party non-consensual releases in the context of a liquidating debtor, Appellants fail to cite a any cases supporting their assertion that plans of liquidation may never contain non-consensual third-party releases. This lack of authority does not bode well for the likelihood of success on appeal. *See Mickens-Thomas v. Martinez*, 2005 WL 1586212, at *3 (3d Cir. July 7, 2005) ("The District Court noted the paucity of legal support for [the movant's] claims, and reasonably concluded that those claims do not have a reasonable likelihood of success on the merits."); *Miller v. Penn Manor Sch. Dist.*, 588 F. Supp. 2d 606, 626-27 (E.D. Pa. 2008) ("[P]laintiffs have cited no legal authority to support their conclusion. . . . In the face of the utter lack of authority . . . I conclude that plaintiff fails on his [] challenge on this point and has no likelihood of success on the merits of this claim.").

In support of their argument, Appellants have attempted to broaden the Third Circuit's holding in *Continental* and that of its more recent decision, *In re Millennium Lab Holdings II, LLC*, 945 F.3d 126 (3d Cir. 2019). Appellants argue that *Continental* and *Millennium* hold that non-consensual third-party releases are permissible where they are "necessary to the reorganization," and therefore plans of liquidation, like the Plan at issue here, cannot satisfy the test. (D.I. 4 at 4). Nowhere in *Continental* or *Millennium,* however, does the Third Circuit hold

6

that a court may not approve a plan of liquidation containing a non-consensual third-party release where that plan otherwise satisfies the "exacting standards" established by Third Circuit precedent. *See Millennium*, 945 F.3d at 139 ("Our precedents regarding nonconsensual third-party releases and injunctions ***in the bankruptcy plan context*** set forth exacting standards that must be satisfied if such releases and injunctions are to be permitted . . .") (emphasis added).

Appellants cite decisions from other jurisdictions which either characterized such releases as "extraordinary relief" or found such releases to be impermissible. (*See* D.I. 4 at 16-19). Precedent from outside this Circuit will not raise Appellants' likelihood of success to a level warranting the extraordinary relief of staying a confirmed plan. Courts in the Third Circuit and others have approved plans of liquidation containing non-consensual third-party releases based upon a showing of fairness, necessity, and exceptional circumstances. *See e.g., In re Blitz U.S.A.*, 2014 WL 2582976 at *13-23 (Bankr. D. Del. Jan. 30, 2014) (approving a plan of liquidation containing non-consensual third-party releases); *see also In re Residential Capital, LLC*, 2013 WL 12161584, at *14 (Bankr. S.D.N.Y. Dec. 11, 2013) (same); *In re Movie Gallery, Inc.*, 2010 Bankr. LEXIS 5778, at *21 (Bankr. E.D. Va. Oct. 29, 2010) (same).

Appellants have failed to carry their burden of demonstrating they have a "significantly better than negligible" chance of success on the merits of their argument plans of liquidation may not contain non-consensual third-party releases.

> **2.     Appellant Points to No Clear Error in the Bankruptcy Court's Findings In Support of Confirmation**

Appellants assert that they are likely to succeed on the merits of their appeal of the Confirmation Order because the Bankruptcy Court's factual findings as to necessity, fairness, and exceptional circumstances were clearly erroneous. (*See* D.I. 4 at 11-14, 20-22, 24). Appellate courts review a bankruptcy court's findings of fact for clear error. *In re Culp*, 550 B.R. 683, 695

7

(D. Del. 2015). Under the clear error standard, a factual determination will not be set aside unless "that determination is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *In re Dr. R.C. Samanta Roy Inst. of Sci. Tech. Inc.*, 465 F. App'x 93, 96 (3d Cir. 2011) (citation omitted). If a party is seeking a stay of a bankruptcy court order on the basis that the bankruptcy court made clearly erroneous factual findings, the moving party must either point to evidence clearly contradicting the bankruptcy court's findings or show that there is no evidence in the record to supporting the bankruptcy court's findings. *See Culp,* 550 B.R. at 698; *see also In re THG Holdings LLC*, 2019 WL 6615341, at *3-5 (D. Del. Dec. 5, 2019). When an appellee has introduced evidence into the record and "an appellant has presented no relevant evidence, there little chance of it prevailing" on appeal. *In re Prospector Offshore Drilling S.a.r.l.*, 2018 WL 1419086, at *3 (D. Del. Mar. 22, 2018).

   *Necessity.* First, Appellants argue that the Bankruptcy Court erred in finding that the non-consensual third-party releases of the former officers and directors are necessary to the Plan. (D.I. 4 at 20-22). Appellants assert that neither the former officers' and directors' waiver of their potential indemnity claims against the Debtors nor their waiver of their rights under the Insurance Policies to seek full and priority reimbursement of their defense costs constitute substantial contributions to the Plan. (*Id.*). Appellants argue that the claims the former officers and directors have for reimbursement of defense costs is "disputed," and the Plan Proponents did not demonstrate that the release of those claims is a significant contribution to the Debtors' plan. (*Id.*).

   The Bankruptcy Court made a clear finding that the non-consensual third-party release of the former officers and directors was necessary to the Plan: "it is clear that without the contributions by the insurance company and the directors and officers who are being released,

there could be no confirmation. The debtor has $3 million, which is not sufficient to pay administrative claims, let alone any recovery for other creditors. So, without the settlement, no plan is possible." (D.I. 4-2, 1/25/21 Hr'g Tr. at 115:7-12). The Bankruptcy Court further found that the directors' and officers' contribution of their subordination and waiver was significant. (*See id*. at 113:4-14). These findings are supported by the uncontroverted evidence in the record. (*See* Bankr. D.I. 3125 (November 2020 monthly operating report showing Debtors had $3.5 million of cash on hand); Bankr. D.I. 3185, Decl. of Ivona Smith (Debtors' Director) (attesting that (i) absent the Plan's releases, "the Debtors likely would be subject [to] a substantial number of claims and lawsuit related to Sexual Misconduct Claims," holders of those claims "would be forced to litigate their claims in the tort system," and "[e]ven if successful at obtaining a judgment against the Debtors, Holders of Sexual Misconduct Claims would have recourse only to the limited, dwindling funds of the Debtors' Insurance Policies with respect to recovery on such claims, and the Insurance Companies would have the right to assert coverage defenses" (*id*. ¶ 22); (ii) D&O and Employment Practices Liability policies, which cover the Debtors and former officers and directors, are "wasting policies" "whereby each dollar expended to reimburse covered fees and expenses or to satisfy covered claims against parties reduces available coverage thereunder on a dollar-for-dollar basis" (*id*. ¶ 14); and (iii) "suits against the Former [officers and directors] may involve the Debtors and any recoveries against the Former [officers and directors] will deplete the Debtors' coverage, give rise to certain indemnification obligations, and otherwise deplete limited estates resources" (*id*.)).

Moreover, as Appellee correctly points out, the Bankruptcy Court's finding that these releases were necessary to the Plan is consistent with other cases which have considered similar relief. *See e.g., In re 710 Long Ridge Rd. Operating Co., II, LLC*, 2014 Bankr. LEXIS 863, at *53-

55 (Bankr. D. N.J. Mar. 5, 2014) (finding that the non-debtors' waiver of claims against the debtors and the non-debtors' providing the plan funding constituted a critical contribution to the plan); *Residential Capital*, 2013 WL 12161584, at *14 (same).

Appellants appear to argue that the Bankruptcy Court committed an error of law by reducing the "necessity" analysis of the *Continental* test to an inquiry merely concerning "the amount of money necessary to return one cent more to creditors under a plan than they would receive a chapter 7." (*See* D.I. 4 at 18). As Appellee correctly points out, this argument is plainly contradicted by the arguments and evidence put forth by the Plan Proponents, and the Bankruptcy Court's specific factual findings on the necessity of the Plan's non-consensual third-party releases (discussed below). (*See* Confirmation Brief ¶¶ 44-72; D.I. 4-2, 1/25/21 Hr'g Tr. at 112:17-119:13).

Appellants offered no evidence in support of its assertions that the releases were not necessary to the Plan. Appellants rely primarily on the Third Circuit's analysis in *Continental*. In that case, they argue, the Third Circuit considered but dismissed the District Court's finding that "the release and permanent injunction of Plaintiffs' lawsuits [was] a 'key element' of [the] [r]eorganization because the Continental Debtors were obliged to indemnify the D&Os, and thus would ultimately bear the burden of Plaintiffs' lawsuits." *Continental,* 203 F.3d at 215 (internal citations omitted). In making this finding, the Third Circuit noted that "the District Court assumed facts not of record," *id*. at 215, and it found "***no evidence in the record before us supporting the possibility or probability of D&O indemnification as a factual or legal matter***. Even if the D&O defendants' obligations culminating from Plaintiffs' class actions were indemnifiable, the fact that the reorganized Continental Airlines *might face an indemnity claim sometime in the future*, in some unspecified amount, does not make the release and permanent injunction of Plaintiffs' claims 'necessary' to ensure the success of the . . . reorganization." *Id*. at 216 (emphasis added).

10

Contrary to the Appellants' assertions, these Chapter 11 Cases are easily distinguishable from *Continental*, where the Third Circuit rejected non-consensual third-party releases because "the order confirming the [] [d]ebtors' plan of reorganization and releasing and permanently enjoining [the] [p]laintiffs' claims was ***not accompanied by any findings*** that the release was fair to the [p]laintiffs and necessary to the [] [d]ebtors' reorganization." *See Continental*, 203 F.3d at 214 (emphasis added). Here, tort actions against indemnified former officers and directors have already commenced (D.I. 4 ¶¶ 13, 15-16; Confirmation Brief 9; Decl. of Paul H. Zumbro, Ex. 2 § 2). More importantly, unlike *Continental*, the Bankruptcy Court's ruling that the releases were necessary to the Plan was accompanied by specific findings supported by the record. (*See* D.I 4-2, 1/25/21 Hr'g Tr. at 114:1-7; *see also* Confirmation Brief ¶¶ 9, 47-50; Bankr. D.I. 3185, Decl. of Ivona Smith, ¶¶ 5, 8, 13-4, 22-23; Zumbro Decl., Ex. 2). In sum, Appellants fail to establish that their necessity argument has a more than negligible chance of success on appeal. *See Culp*, 550 B.R. at 698; *see also THG Holdings*, 2019 WL 6615341, at *3-5; *Prospector*, 2018 WL 1419086, at *3.

*Fairness*. Second, Appellants argue that the Bankruptcy Court erred in finding that the non-consensual third-party releases are fair. (*See* D.I. 4 at 24). Part of the inquiry into the fairness of non-consensual third-party releases is determining whether reasonable consideration is given in exchange for the releases. *See United Artists Theatre Co. v. Walton*, 315 F.3d 217, 227 (3d Cir. 2000) (citing *Continental*, 203 F.3d at 214-15). The consideration provided is reasonable if under the proposed plan, recovery of the non-consenting creditors is greater than under a chapter 7 liquidation scenario. *See In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 607-08 (Bankr. D. Del. 2001); *see also 710 Long Ridge*, 2014 Bankr. LEXIS 863 at *55. Appellants argue that the Debtors did not introduce evidence showing that Appellants will fare better under the Plan. (D.I. 4

at 22-24). The record reflects, however, that the Plan Proponents introduced into evidence the *Declaration of Kyle Herman* (Bankr. D.I. 3186) and the *Liquidation Analysis* (Bankr. D.I. 3098, ¶ 15 & Ex. B) prepared by Mr. Herman (*see* D.I. 4-2, 1/25/21 Hr'g Tr. at 80:11-81:12), which establish that recoveries for Holders of Sexual Misconduct Claims such as Appellants likely are significantly greater under the Plan than any potential recoveries in a chapter 7 liquidation scenario. Appellants declined the opportunity to cross-examine Mr. Herman or introduce any contradictory evidence showing that their likely recoveries in a chapter 7 liquidation scenario would be greater than their likely recoveries under the Plan. (*See id.* at 81:4-6). Based on the uncontroverted evidence submitted by the Plan Proponents, the Bankruptcy Court found "it's clear that under this plan, creditors are getting more than if there were a chapter 7 liquidation." (*Id.* at 113:15-19).

Appellants argue that "showing that tort claimants fare better under the Plan than in chapter 7 . . . is a false comparison. They always will fare better even if the plan pays 1 cent more on the dollar. There must [be] testimony as to how they fare if they are permitted to pursue their claims in the tort system." (D.I. 4 at 5). Appellants cite no authority in support of their argument.

In support of confirmation, Plan Proponents submitted evidence that the Plan releases were the subject of extensive arm's-length negotiations among all of the parties and are an essential part of the plan. (Bankr. D.I. 3185, Smith Decl. ¶ 8). Plan Proponents also presented evidence, and the Bankruptcy Court correctly found, that absent the Plan's global settlement, which includes the non-consensual third-party releases of former officers and directors, the almost certain result would be a chapter 7 liquidation[4] with no economic recovery whatsoever for the survivors of

---

4   Prior to the confirmation hearing the Debtors filed a conditional motion to convert the cases to chapter 7 liquidation in the event the Plan was not confirmed. (*See* Bankr. D.I. 2357; *see also* D.I. 4-2, 1/25/21 Hr'g Tr. at 115:23-25).

Weinstein's misconduct.[5] Against this potential outcome, the Plan provides a meaningful recovery to victims like Appellants. The Bankruptcy Court's fairness finding is further supported by the fact that the Holders of Sexual Misconduct Claims overwhelmingly voted to accept the Plan – over 82%[6] – after Plan Proponents clearly described the releases in the Disclosure Statement and the consideration being given in exchange for the releases. As the Bankruptcy Court found:

> 83 percent of the victims have expressed very loudly that they want closure through acceptance of this plan, that they do not seek to have to go through any further litigation in order to receive some recovery, some possible recompense for what was done to them; although, it is clear that money alone will never give them that. But I can only deal with the financial aspect of this, and the Bankruptcy Code provides that creditors should decide, as a class, how they want their claims to be treated. And in this case, both the trade creditors and the tort creditors, have come to a resolution with some recovery for the victims of Mr. Weinstein's terrible conduct.

(D.I. 4-2, 1/25/21 Hr'g Tr. at 116:22-117:8). Appellants may disagree with the rest of their class, but that does make the Plan unfair. Appellants' failure to controvert the Plan Proponents' evidence regarding the fair consideration provided in exchange for the releases shows that their argument on this issue "has little chance of success on appeal." *See Prospector*, 2018 WL 1419086, at *3.

---

[5] *See also* Smith Decl. ¶ 5 ("Based on my knowledge of the mediation sessions, I believe that the Injunctions and Plan Releases were necessary inducement for the signatories to the Plan Support Agreement (the "Settlement Parties") to reach agreement on the contributions set forth therein and as reflected in the Settlement embodied in the Plan. Absent the Injunctions and Plan Releases . . ., I do not believe that the Settlement Parties would have reached agreement on the terms of a Plan Support Agreement and Settlement, and without the Plan Support Agreement and Settlement, I do not believe that the Debtors could formulate and consummate a confirmable chapter 11 plan.").

[6] *See* Bankr. D.I. 3160, *Declaration of Stephenie Kjontvedt of Epiq Bankruptcy Solutions, LLC. Regarding Solicitation of Votes and Tabulation of Ballots Cast on the Fourth Amended Joint Chapter 11 Plan of Liquidation*.

***Exceptional circumstances.*** Appellants argue that they are likely to succeed on the merits of their appeal because the Bankruptcy Court's exceptional circumstance finding was clearly erroneous. Appellants argue that there is "nothing exceptional about a moribund chapter 11 case that lacks sufficient cash to pay its expenses of administration" and "nothing exceptional about insurance companies paying less to fund a plan of reorganization that would cost them if they were forced to litigate further in the tort system." (D.I. 4 at 26-27). The Bankruptcy Court, however, based its exceptional circumstances finding on the Plan's prospect for a meaningful recovery by victims that would be unavailable absent the global settlement:

> I think that the case that is before me is one of the most exceptional cases. It cries out for the granting of third-party releases; albeit, nonconsensual third-party releases, as to the other directors and officers. Because without that, I find that the victims of Mr. Weinstein's actions would get minimal, if any, recovery.

(D.I. 4-2, 1/25/21 Hr'g Tr. at 117:16-21). This finding is well supported by the record. (Bankr. D.I. 3185, Smith Decl. ¶¶ 5-8; Bankr. D.I. 3098, Ex. B). Appellants offer no evidence to controvert the Bankruptcy Court's finding that, absent the approval of the releases in this extraordinary case, and the funding of the Plan, any recovery by Weinstein's victims would be minimal.

Appellants' remaining arguments as to necessity, fairness and exceptional circumstances merely repeat the arguments in Appellants' Objection to plan confirmation, point to no additional evidence in the record, and fail to establish a likelihood of success with respect to the previously rejected arguments. (*Compare* Objection ¶¶ 28-49, 52-56, 58, *with* D.I. 4 at 24-27). *See In re Color Spot Holdings, Inc.,* 2018 WL 3996938, at *3 (D. Del. Aug. 21, 2018) ("[T]he [e]mergency [m]otion rehashes the same arguments considered and rejected by the [b]ankruptcy [c]ourt based on the same evidence . . . . Merely repeating these rejected arguments does not meet the

14

'substantial' burden [a]ppellants have to show a likelihood of success on the merits of their appeal.").

### B. Irreparable Harm to Appellant In Absence of a Stay

Whether a moving party has established irreparable harm is the second of the two "most critical factors" in determining whether the moving party carried its burden to obtain a stay pending appeal. *Revel AC*, 802 F.3d at 571. Irreparable harm "refer[s] to 'harm that cannot be prevented or fully rectified' by a successful appeal." *Id.* at 568 (quoting *Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380, 386 (7th Cir. 1984)). Moreover, the movant must "demonstrate that irreparable injury is likely [not merely possible] in the absence of [a] [stay]." *Id.* at 569 (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

Appellants' two arguments in support of irreparable harm in absence of a stay of plan consummation are unavailing. Appellants first argue that "the uncertainty of how the appellate courts in the circuit may apply the mootness principles places the [Appellants] at risk of irreparable injury if a stay pending appeal is not granted, as they may be denied their right of substantive appellate review absent a stay." (*See* D.I. 4 at 28) (citing *In re Los Angeles Dodgers LLC*, 465 B.R. 18, 36 (D. Del. 2011) and *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991)).

Case law in this Circuit, including the two cases cited by Appellants in support of their argument, establishes that a party seeking a stay pending appeal cannot establish irreparable harm solely on the basis that the court's failure to grant the stay may equitably moot the moving party's appeal. *See Republic of Philippines*, 949 F.2d at 658 ("[T]he fact that the decision on the stay may be dispositive of the appeal . . . is a factor that an appellate court must consider, but that alone does not justify pretermitting an examination of the nature of the irreparable injury alleged and the

particular harm that will befall the appellant should the stay not be granted."); *In re Swift Energy Co.*, 2016 WL 3566962, at *7 (D. Del. June 29, 2016) ("[I]t is well established that the possibility that an appeal may become moot does not constitute irreparable harm for purposes of obtaining a stay") (citation omitted); *W.R. Grace*, 475 B.R. at 206-07 (same) (collecting cases); *Los Angeles Dodgers*, 465 B.R. at 36 (same).

Appellants' second irreparable harm argument is that the delay associated with the prosecution of the appeal will endanger their ability to secure evidence and testimony they assert is needed to prevail on their claims and they may be forced to dismiss their cases pending in other jurisdictions. Appellants make no showing as to how denial of the requested stay will prevent them from securing testimony or evidence or force the dismissal of their pending cases. Appellants also appear to jump to the conclusion that if denied a stay they will automatically lose the appeal, but Appellants present no support for their reasoning. In sum, Appellants have failed to establish irreparable harm warranting a stay of the Confirmation Order.

### IV.    CONCLUSION

Appellants fail to carry their burden on the two most critical factors — likelihood of success on the merits and irreparable harm. Accordingly, no further analysis is required, and the Court will deny the Emergency Stay Motion. *See Revel AC*, 802 F.3d at 571. An appropriate order follows.